DR. P. PHILLIPS CANNING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7676, 27699. Promulgated January 24, 1952.

*George E. H. Goodner, Esq.*. and *Dewey R. Roark, Jr., Esq.*, for the petitioner.

*Roy A. Wentz, Esq.*, for the respondent.

1224

### OPINION.

MURDOCK, *Judge:* One of the arguments which the petitioner makes to support its claims for relief is that it suffered losses in 1938 and 1939 and failed to realize profits in its fiscal year 1938, the first year of its existence, as a result of entering into contracts for the future delivery of 480,000 cases of citrus products. Apparently all or the larger part of its total production for that year was covered by the contracts. One-third of each order was to be delivered as soon as the product had been canned, another one-third was to be delivered on April 1, 1938, and the remaining one-third was to be delivered on June 1, 1938. It says that it expected to make 15 cents a case, or $72,000, under those contracts if the contract price had been paid. However, the contracts further provided, in effect, that if market prices had declined at the date of any delivery under the contract, the purchaser could cancel

that portion of the contract unless the petitioner met the then current market price. Prices declined and the purchasers took at the contract prices only 10 per cent of the goods contracted for. The petitioner then had to sell the remaining goods as best it could and it sustained losses, the exact amount of which is not known. The petitioner contends that section 722 (b) (1) or (b) (2) applies.

The Court finds no merit in the petitioner's arguments based upon these contracts. The contracts may have been bad bargains but there is no showing of how the petitioner could have avoided losses on the falling market which existed or what the result of its operations might have been had it had no such contracts. The petitioner does not contend that the decline in market prices depressed business within the meaning of section 722 (b) (2). The contracts were not "temporary economic circumstances." They had no effect upon production or output. They did not interrupt or diminish the normal operation of the business. Not every unusual event qualifies a taxpayer for relief under section 722 but only those described in (b). The petitioner describes the loss as "abnormal." The statute provides for an adjustment for abnormal deductions in section 711 (b) (1) (J), but such adjustments do not come within the relief granted by section 722, which is the only issue before the Court at this time. The petitioner has not demonstrated that it qualifies for relief under section 722 (b) (1) or (2) stemming from these contracts.

The petitioner contends that it qualifies for relief under section 722 (b) (4) because it changed the character of its business during the base period and the average base period net income does not reflect the normal operation for the entire base period.[1] It began to use waste materials during the base period, first to make a dairy feed, and, near the close of the period, to make citrus oils. Formerly, disposition of those waste materials was an expensive step in the canning business. That expense was eliminated and some gross profits resulted from the sale of the new by-products. The operation after the two changes were made was, first, the processing of the fruit to obtain the sections and juice for canning, next, the processing of the peelings to obtain the citrus oils and, finally, the peelings, seeds and rag were chopped and steam-dried to produce the dairy feed. Commercial sales of dairy feed were made by the petitioner in its fiscal year 1938 and subsequent years. Its first commercial sales of citrus oil were made in its fiscal year 1940. The petitioner argues that the manufacture and sale of these two by-products represented a change in the operation of

---

[1] The petitioner does not claim that it qualifies for relief under section 722 (b) (4) because it began business during the base period. The Commissioner has computed constructive income for the part of the base period during which the petitioner was not in existence. The amount which he has computed is not based upon income but upon the daily invested capital for the first day of the taxpayer's first taxable year beginning after December 31, 1939, in accordance with section 713 (d) (2) (A).

its business or a difference in the products furnished within the meaning of section 722 (b) (4).

Assuming, for the purpose of discussion, that the petitioner has qualified for relief under section 722 (b) (4) as it contends, the next question is whether it has shown what would be a fair and just amount representing normal earnings, taking the change into consideration, to be used as constructive average base period net income. It argues that the annual profits from each by-product would have amounted to $10,000, but the competent evidence does not support that contention. No sales of citrus oil prior to January 1, 1940, have been shown. The only evidence of probable earnings from the sale of the oil is the testimony of a witness who based his estimate on sales made after December 31, 1939. There is an express provision in section 722 (a) that no regard shall be had to such events in determining constructive average base period net income. The Court is without competent evidence on which to base an estimate of the possible effect of the oil sales on constructive average base period net income.

There were normal sales of the dairy feed during the fiscal years 1938, 1939, and 1940, prior to December 31, 1939. This part of the business, apparently reached its normal earning level in 1938. The only adjustments to base period net income which the taxpayer seeks in this connection is to add $10,000 to 1937 income and $8,000 to 1939 income. Its only basis for such adjustments is the testimony of a witness who said that the "gross" profits from the feed sales had amounted to about $10,000 in 1938 and probably would have amounted to $10,000 in 1939 had the petitioner not adopted the unprofitable practice of buying waste from another canner and hauling it at considerable expense to the petitioner's plant. The record does not show the net earnings from the feed business for any year. The Court could certainly not conclude that the net earnings from feed would be $10,000 from the testimony that such sales had resulted in gross income of that amount. Furthermore, the adustment which the petitioner seeks for 1937 is obviously incorrect. The petitioner was not in existence during that year and had no income. Instead, the Commissioner has computed a purely statutory amount to represent income for that year. The amount is not based upon and is not affected by income and is larger than the $10,000 which the petitioner seeks. It is not suggested that there is authority for combining the two. The claimed adustment for 1939 is merely the elimination of an alleged loss resulting from the petitioner's attempt to process the waste of another company. The actual amount of the alleged loss is not shown. Here again, it must be pointed out that the relief here claimed under section 722 (b) (4) does not include the elimination of abnormal deductions which might come under section 711 (b) (1) (J).

It is not necessary to decide whether the changes represented changes in the business within the meaning of section 722 (b) (4), the extent to which the contentions now made under the section are within the claims filed, or to what extent the "push-back" rule might be applicable to the oil sales, since it appears that no relief would result in any event.

Reviewed by the Special Division.

*Decisions will be entered for the respondent.*

